**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TIMOTHY WRIGHT,

        Petitioner,                  Civil No. 2:21-CV-10688
                                       HONORABLE NANCY G. EDMUNDS
v.                                 UNITED STATES DISTRICT JUDGE

MATT MACAULEY,

        Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

        Timothy Wright, ("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his convictions for first-degree premeditated murder, M.C.L.A. § 750.316(a), felon in possession of a firearm, M.C.L.A. § 750.224f, and felony-firearm, second offense, M.C.L.A. § 750.227b.  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. BACKGROUND**

        Petitioner was convicted following a bench trial in the Wayne County Circuit Court.

        This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> As defendant admitted on cross-examination at trial, surveillance video from the gas station in which the murder occurred showed defendant chasing the victim, Deangelo Turner, down the snack chip aisle while defendant was holding a pistol. Defendant fired his weapon a few times as he was pursuing Turner. Turner attempted to pull items off the store shelf and fell to the ground, crouching into a fetal position. Defendant stood over Turner and fired his weapon point blank at

1

Turner while Turner was on the ground and not firing back. Defendant then walked out of the gas station, calling Turner a "b----" and other names. Defendant admitted that he then ran away from the gas station because he knew he was in trouble. The medical examiner's report indicated that Turner died from multiple gunshot wounds, including two gunshot wounds to the back of his neck fired at close range and in a downward trajectory. The evidence supports the conclusion that defendant intentionally killed Turner and that the act was done with premeditation and deliberation. Defendant had an opportunity to take a second look at his actions as he pursued Turner, shot at him while chasing him down the aisle, and then shot him again after he fell and as defendant stood over him. Although defendant claimed that Turner had a weapon, defendant admitted that the video did not show Turner with a weapon, and the trial court did not credit defendant's self-serving and uncorroborated assertion that Turner was armed.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The prosecutor was not required to disprove defendant's voluntary manslaughter theory. In any event, the evidence credited by the trial court did not support defendant's claim that he was acting in the heat of passion caused by adequate provocation. Although defendant and Darious Culpepper presented testimony suggesting that Turner had used his motor vehicle to knock defendant off his bicycle earlier that day, the trial court found that defendant and Culpepper were not credible witnesses, and this Court does not interfere in the trier of fact's credibility determinations. Even if defendant's claim regarding being hit off his bicycle was true, defendant admitted that the bicycle incident happened approximately 30 to 40 minutes before the shooting at the gas station. Defendant also admitted that he walked around to cool off after being knocked off his bicycle and that he in fact did cool off. Hence, defendant has not established that the trial court clearly erred in rejecting defendant's theory that he shot Turner in the heat of passion caused by adequate provocation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant's Standard 4 brief also suggests that there was insufficient evidence because he was knocked off his bicycle by Turner's car and that Turner pulled out a gun and ran toward defendant inside the gas station; defendant contends that he was thus acting out for fear for his life when he pulled his gun and shot Turner. In essence, defendant appears to be arguing that the prosecution failed to present sufficient evidence to exclude the possibility of self-defense beyond a reasonable doubt. MCL 780.972(1) (an individual who has not engaged in a crime when using deadly force may use deadly force if "[t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual."). Defendant's argument that he acted in self-defense overlooks the trial court's declination to credit defendant's testimony that Turner possessed a gun and ran toward defendant. This Court does not interfere in the trier of fact's credibility determinations. The video contradicts defendant's argument regarding what happened inside the gas station; it shows defendant chasing and firing shots at an

2

apparently unarmed Turner inside the store, Turner falling, and then defendant firing more shots at Turner as Turner lay on the ground. Defendant's claim that he feared for his life because Turner had knocked defendant off his bicycle earlier is inconsistent with the fact that defendant went into the gas station *knowing* that Turner was there.

*People v. Wright*, No. 333488, 2017 WL 6345807, at *2-3 (Mich. Ct. App. Dec. 12, 2017)(emphasis original, additional citations omitted).

Petitioner's conviction was affirmed on his direct appeal. *Id.*, *lv. den*., 910 N.W.2d 290 (Mich. 2018); *reconsideration den.* 915 N.W.2d 368 (Mich. 2018).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Wright*, No. 15-009130-01-FC (Wayne County Cir. Ct. July 8, 2019); ECF No. 7-13. The Michigan appellate courts denied Petitioner leave to appeal. *People v. Wright*, No. 351907 (Mich. Ct. App. Apr. 17, 2020); *lv. den.* 951 N.W.2d 653 (Mich. 2020).

On March 19, 2021, Petitioner filed his habeas corpus petition. Petitioner subsequently filed a motion for the Court to hold his habeas petition in abeyance while he returned to the state court to exhaust state remedies for one or more claims about newly discovered evidence. This Court granted the motion to hold the petition in abeyance so that Petitioner could return to the state courts to exhaust these additional claims. *See Wright v. Brown*, No. 2:21-CV-10688, 2022 WL 2440746 (E.D. Mich. July 5, 2022).

Petitioner filed a second motion for relief from judgment with the trial court. The trial court denied Petitioner's motion because the video surveillance evidence was not newly discovered evidence within the meaning of Michigan Court Rule 6.502(G)(2) that would allow Petitioner to file a successive motion for relief from judgment because Petitioner had been aware of this evidence at the time of his direct appeal and further found Petitioner's claims to be without merit. *See People v. Wright*, No. 15-009130-01-FC (Wayne County Cir. Ct. Dec. 21, 2022); ECF No. 21-

3

7.   The Michigan Court of Appeals denied Petitioner's application for leave to appeal because Petitioner "failed to establish that the trial court erred in denying the successive motion for relief from judgment," citing Michigan Court Rule 6.502(G). *People v. Wright,* No. 364722 (Mich.Ct.App. June 9, 2023); ECF No. 21-8, PageID. 2051.  Petitioner then applied for leave to appeal this decision in the Michigan Supreme Court, but he was denied relief under Michigan Court Rule 6.508(D). *People v. Wright*, 997 N.W.2d 221 (Mich. 2023).

On  January 10, 2024, this Court granted the motion to reopen the case, permitted Petitioner to file an amended habeas petition, and directed Respondent to file an answer to the amended petition. (ECF No. 13).

Respondent filed an answer to the amended petition (ECF No. 20) and Petitioner filed a reply. (ECF No. 22).

This Court subsequently granted Petitioner's motions to amend the caption and to expand the record to file media flashdrives in the traditional manner. (ECF No. 26).

Petitioner in his amended habeas petition (ECF No. 12) seeks relief on the following five grounds: (1) appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to object to the trial court's waiver of Petitioner's right to have Sergeant O'Rourke at trial, and that O'Rourke's attendance at trial was prevented by governmental interferences in violation of the Sixth Amendment, (2) trial counsel was ineffective for failing to adequately represent Petitioner during the plea bargaining process, (3) the trial court abused its discretion when it denied Petitioner's second motion for relief from judgment without holding an evidentiary hearing regarding his newly discovered evidence, (4) Petitioner is entitled to a new trial based on newly discovered evidence of video surveillance footage from the store where the shooting took place that was obtained from the Detroit Police Department, and (5) Petitioner's

4

state and federal constitutional rights to due process were violated where the prosecutor

withheld/suppressed exculpatory evidence of the additional video surveillance footage taken from

the store where the shooting took place.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.   A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.   "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*

*v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. DISCUSSION

### A.  The Court will not dismiss a portion of the amended petition on statute of limitations grounds.

Respondent in their supplemental answer urges this Court to summarily dismiss the third, fourth, and fifth claims raised in the amended petition on statute of limitations grounds because Petitioner filed this amended petition after the limitations period expired and these three claims, raised for the first time in his amended petition, do not relate back to the claims raised by Petitioner in his original, timely filed petition. Petitioner, on the other hand, argues that his third through fifth claims are timely pursuant to 28 U.S.C.§ 2244(d)(1)(D), because he only discovered the factual predicate for these claims in 2022.  Respondent disputes this contention, arguing that Petitioner was aware of the existence of the surveillance videotapes well before 2022.

The statute of limitations does not constitute a jurisdictional bar to habeas review, thus, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F.3d 426, 429, n. 2 (6th Cir. 2006). Assuming without deciding that the amended petition was timely, Petitioner's claims, as will be mentioned below, fail on the merits. *See Ahart v. Bradshaw,* 122 F. App'x 188, 192 (6th Cir. 2005).

### B.  Claims # 1 and # 2. The ineffective assistance of counsel claims.

Petitioner in his first and second claims alleges he was denied the effective assistance of trial and appellate counsel. [1]

---

[1] Respondent urges this Court to procedurally default at least a portion of these claims because Petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise them on his appeal of right.  It is unnecessary to address the procedural default issue because the claims are without merit.  *See Post v. Bradshaw,* 621 F.3d 406, 426 (6th Cir. 2010).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

Petitioner in his first claim alleges that his appellate counsel was ineffective for failing to raise two claims related to the absence of Sergeant O'Rourke from trial.  Petitioner first argues that appellate counsel should have raised on his appeal a claim that trial counsel was ineffective for failing to call Sergeant O'Rourke to testify or demand that the prosecutor produce him. Petitioner also claims that appellate counsel should have raised a claim that the prosecutor deliberately interfered with Sergeant O'Rourke appearing at trial. Petitioner alleges that Roderick Hinton, who was present during the shooting, hid the gun that the victim allegedly possessed.

7

Petitioner points to a police report in which Sergeant O'Rourke states that he observed Hinton leaving the scene before returning and giving a statement.  Petitioner claims that this report would somehow support his allegation that Hinton removed the victim's firearm from him to hide it and to conceal that the victim was the aggressor.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016)(per curiam).

Petitioner is not entitled to relief on any underlying ineffective assistance of trial counsel claim because he failed to provide to the Michigan courts or to this Court an affidavit or other proof from Sergeant O'Rourke concerning his proposed testimony and willingness to testify on Petitioner's behalf.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of counsel claim, Petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(*citing* 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Sergeant O'Rourke would

have been able to testify and what the content of his testimony would have been.  He particularly has shown no evidence that Sergeant O'Rourke would support Petitioner's allegation that Hinton removed the victim's gun from him and left the store with it prior to the arrival of the police. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call Sergeant O'Rourke to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, this Court would be unable at this point to entertain any affidavits from Sergeant O'Rourke.  The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Therefore, *Cullen* would preclude the Court from considering any new evidence that Petitioner would even want to present at this point in support of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).  Petitioner presented no evidence to rebut the presumption that counsel's decision to forego calling Sergeant O'Rourke was strategic or that the outcome of the trial would have been different had this evidence been presented.

Petitioner further alleges that the prosecutor deliberately prevented Sergeant O'Rourke from appearing at trial.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense.  This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether

9

rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory

Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal

defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted).

"Government conduct that rises to the level of substantial interference with a witness's 'free and

unhampered determination to testify' violates this right." *Johnson v. Bell*, 525 F.3d 466, 480 (6th

Cir. 2008)(citing *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997)).

The only proof that Petitioner offers in support of his interference claim is that Sergeant

O'Rourke was out of state for training on the day of trial, although he would be available to testify

the following Monday. Petitioner appears to argue that the prosecution somehow arranged for

Sergeant O'Rourke to be out of state on the day of Petitioner's trial so that he could avoid testifying

for Petitioner.

It is true that if a prosecutor deliberately encourages and helps a witness to leave the state

to avoid testifying at a criminal defendant's trial, this can amount to prosecutorial interference with

a defense witness. *See Lockett v. Blackburn,* 571 F.2d 309, 311 (5th Cir. 1978)(prima facie

violation of petitioner's due process rights established by showing that the State of Louisiana

encouraged and helped two government informants who were eyewitnesses to the alleged crime

to leave Louisiana just before petitioner's trial).  Petitioner's claim fails, though, because he has

presented no evidence that the prosecutor or the police deliberately arranged for Sergeant

O'Rourke to be out of state on the day of Petitioner's trial. On April 28, 2016, the first day of

Petitioner's trial, the prosecutor agreed to defense counsel's request to have Sergeant O'Rourke

produced for trial.  The trial was continued for the production of Sergeant O'Rourke and other

witnesses. (ECF No. 7-8, PageID. 619-21).  When the trial reconvened on May 13, 2016, the

prosecutor indicated that Sergeant O'Rourke had been subpoenaed for trial at defense counsel's

request but that according to the officer-in-charge of the case, Sergeant O'Rourke was out of state for training but would be back the following Monday.  Defense counsel indicated she would discuss the matter further with the prosecutor at the lunch break. (ECF No. 7-9, PageID. 660-63). There is no indication from the transcript that the issue involving Sergeant O'Rourke's presence was discussed again. Defense counsel did not request a continuance for Sergeant O'Rourke to appear.  There is, however, nothing from the record to indicate that Sergeant O'Rourke's absence on May 13, 2016 was engineered by the prosecutor, particularly when both the prosecutor and the officer-in-charge indicated that Sergeant O'Rourke would be available the following Monday. Instead, it appears that for whatever reason, counsel decided to forego asking for a continuance of the trial to call Sergeant O'Rourke as a witness.  Petitioner cannot convert a tactical decision not to introduce evidence into a constitutional violation of the right to present evidence generally. *See Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1150 (D. Colo. 1999).

Finally, even if Sergeant O'Rourke's absence from Petitioner's trial violated Petitioner's constitutional right to present a defense, that alleged constitutional error was harmless, because there is no indication that the failure of Sergeant O'Rourke from appearing to testify had a substantial and injurious effect on the judge's rejection of Petitioner's self-defense and provocation defenses when she found him guilty of first-degree premeditated murder. *See Fleming v. Metrish*, 556 F.3d 520, 536-37 (6th 2009). As the Court discusses when addressing Petitioner's fourth and fifth claims below, there was no evidence that Petitioner acted in self-defense when he shot the victim.

Petitioner's claims regarding trial counsel's failure to secure Sergeant O'Rourke for trial or that the prosecutor interfered with his appearance in court are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v.*

11

*Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner is not entitled to habeas relief on his first claim.

Petitioner in his second claim alleges that trial counsel was ineffective for failing to make a counter-offer to the plea bargain offer made by the prosecutor. Petitioner alleges that after the prosecution offered to allow Petitioner to plead guilty to the reduced charge of second-degree murder with a 25-year minimum sentence agreement he asked his counsel to counter-offer with a 20-year minimum sentence but that she refused to do so.

The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 163 (2012); *Missouri v. Frye,* 566 U.S. 134, 143-44 (2012). Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler,* 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he or she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.,* at 164.

A number of cases have held that a criminal defense attorney does not have an independent duty to seek a plea bargain, particularly where his or her client insists that he or she is innocent. "Defense counsel does not always have a duty to initiate plea bargain negotiations." *Beans v. Black,* 757 F.2d 933, 936 (8th Cir. 1985); *See also Welch v. United States*, 370 F. App'x 739, 743

(7th Cir. 2010)(Defense counsel had no obligation to ignore defendant's protestations of innocence and to independently approach government about plea agreement in bank robbery prosecution; not only had defendant clearly stated that he wanted to go to trial, but also, imposing such obligation would jeopardize attorney-client relationship); *Hawkman v. Parratt*, 661 F.2d 1161, 1171 (8th Cir. 1981)(defense counsel does not always have a duty to initiate plea negotiations); *Carter v. United States*, No. 109CR103HSMSKL1, 2018 WL 1387065, at * 11 (E.D. Tenn. Mar. 19, 2018)(Neither *Lafler* nor *Frye* "stand for the proposition that counsel's inability to negotiate or obtain a favorable plea from the government constitutes deficient performance, as there is no constitutional right to plea bargain in the first instance.").  Where a defendant insists on going to trial, an attorney does not perform in a constitutionally ineffective manner by failing to pursue potential plea negotiations. *Hardison v. United States,* No. 3:07-cr-10-3-R; 3:11-cv-00305-R, 2012 U.S. Dist. LEXIS 184296, 2012 WL 6839716, at * 11 (W.D. Ky. Oct. 26, 2012).

Petitioner's claim fails for several reasons.

First, Petitioner has presented no evidence that he ever requested his counsel to make a counter-offer after the prosecutor made the plea bargain offer with the 25 year minimum sentence. More importantly, Petitioner has made no showing that the prosecutor would have agreed to a further reduction of the minimum sentence, particularly after the prosecutor had already agreed after further negotiations to reduce their original offer for Petitioner to plead guilty to second-degree murder with a minimum sentence of 30 years to a minimum sentence of 25 years.

Petitioner's claim also fails because there is no indication that he was interested in accepting any plea agreement. (ECF No. 7-7, PageID. 600-06). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to  establish that he was prejudiced by counsel's alleged deficiency, the defendant must

show that but for the ineffective advice of counsel there is a reasonable probability that defendant would have accepted the plea. *Lafler v. Cooper*, 566 U.S. at 164. In addition, a court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. *Id.* at 171.

Petitioner failed to show that he was prejudiced by counsel's failure to pursue further plea negotiations or advise Petitioner to seek a plea bargain because Petitioner has presented no credible evidence that he expressed any willingness before, during, or after trial to accept responsibility for his actions. In light of Petitioner's repeated protestations of innocence, counsel was not ineffective in failing to initiate further plea negotiations.

The Supreme Court has indicated that "Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives[.]" with respect to the plea bargaining process. *Burt v. Titlow*, 571 U.S. 12, 22 (2013). Because there is no indication that Petitioner would have been willing to make out a factual basis of guilt, Petitioner failed to show that the plea would have been accepted and thus failed to show that he was prejudiced by counsel's alleged deficiencies with respect to the alleged plea offer, so as to establish that he was denied the effective assistance of counsel. *See e.g. Jackson v. United States*, 101 F. App'x 583, 586 (6th Cir. 2004). Petitioner's continued assertions of innocence at his sentencing and even now before this Court, after having been convicted, is further evidence that Petitioner would not have pleaded guilty, so as to establish that he was prejudiced by counsel's alleged deficiencies in failing to make a counter-offer regarding the prosecutor's plea bargain. *See United States v. Willoughby*, 144 F. Supp. 3d 935, 940 (N.D. Ohio 2015). Petitioner is not entitled to habeas relief on his second claim.

14

## C.  Claim # 3. The post-conviction infirmity claim.

Petitioner in his third claim argues that the trial court erred in denying his second motion for relief from judgment, in which he presented allegedly new evidence, without conducting an evidentiary hearing on the claim.

Petitioner is not entitled to habeas relief on his third claim because it involves an alleged deficiency with his state post-conviction proceedings.  This Court notes that "[t]he Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007).  Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d at 681.  The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)).  Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)(quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).  "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247).  Thus, the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 248).  "[T]he writ is not the proper means to challenge

15

collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotations omitted).

The denial of an evidentiary hearing by a state court on post-conviction review does not state a claim upon which habeas relief can be granted. *See e.g. Cornwell v. Bradshaw,* 559 F. 3d 398, 411 (6th Cir. 2009). Because Petitioner sought an evidentiary hearing with respect to claims that he raised in his post-conviction motion, the failure by the state courts to grant him an evidentiary hearing on these claims would not entitle him to relief.

**D. Claim # 4. The newly discovered evidence claim.**

Petitioner in his fourth claim argues he is entitled to habeas relief because the judge denied his motion for a new trial based on allegedly newly discovered evidence of surveillance footage which Petitioner claims would show that the victim had a weapon in his possession at the time of the shooting, which would support Petitioner's claim at trial that he shot the victim in self-defense, which would acquit him of the murder, or alternatively, would reduce the murder charge to voluntary manslaughter on the ground that the victim provoked him.

To the extent that Petitioner seeks habeas relief based on a claim that the video surveillance tapes establish his actual innocence, he would not be entitled to the issuance of a writ. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not

16

cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d at 854-55 (collecting cases).

Moreover, to establish a constitutional due process claim based upon a state court's denial of a motion for new trial based on newly discovered evidence, a habeas petitioner must demonstrate that the trial court's denial of his or her motion for new trial was so egregious that it violated his or her right to a fundamentally fair trial. *See Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009).

The trial judge rejected Petitioner's claim by noting that there was nothing in the video surveillance tapes to support Petitioner's self-defense argument:

> Finally, even if the alleged newly discovered video evidence supports the defendant's contention that the deceased had a weapon inside the gas station, the footage of the murder itself shows that Mr. Turner did not use any weapon in the final moments of his life. He is clearly shown running away from the defendant and pulling down a chip display in order to halt or slow the defendant's murderous assault on him. Mr. Turner was on the floor when the defendant pumped several rounds into him at point blank range. No amount of video footage from before Mr. Wright's attack changes what Mr. Wright did in running Mr. Turner down and shooting him several times in cold blood.

> *See People v. Wright*, No. 15-009130-01-FC, * 5 (Wayne County Cir. Ct. Dec. 21, 2022); ECF No. 21-7, PageID. 2049.

The trial judge had noted earlier in her opinion that Petitioner had attached to his motion for relief from judgment a letter to him from a private investigator, Vicki Yost.  Yost informed Petitioner that she had received all of the videos from the Detroit Police Department, but that these videos did not reveal anything exculpatory to Petitioner's case. The investigator also concluded that "[t]he video evidence in this case is overwhelming and conclusive." *See People v. Wright*, No. 15-009130-01-FC, * 4-5; ECF No. 21-7, PageID. 2048-49.

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances

as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, fn. 1 (6th Cir. 1999)(citing to *People v. Heflin*, 434 Mich. 482; 456 N. W. 2d 10 (1990)).  To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).  Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself or herself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322).  "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

This Court has viewed the videotaped evidence from the gas station where the shooting happened and agrees with the trial court judge that there is no evidence that would support Petitioner's claim that he shot the victim in self-defense. There is no evidence from the videos that the victim had pointed his firearm at Petitioner prior to the shooting.  Petitioner had, in fact, showed up at the party store, where he appears to confront the victim. The victim took off running, with Petitioner chasing him into a corner before shooting him several times while he was on the ground. There is no indication that Petitioner was in imminent danger of death or great bodily harm when he shot the victim and the force employed here was excessive.  The trial judge did not err in denying Petitioner's request for a new trial. Petitioner is not entitled to relief on his fourth claim.

**E.  Claim # 5. The *Brady* claim.**

Petitioner lastly claims that the prosecutor withheld the surveillance videotapes that he has provided to this Court, which he claims would exculpate him of the murder by proving that he acted in self-defense, in that the videotapes show the victim armed with a weapon and also show a friend or acquaintance removing the firearm from the victim after he had been shot.

The suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).

The judge on post-conviction review of Petitioner's second motion for relief from judgment rejected the claim. The judge noted that Petitioner had raised on his appeal of right a claim in a pro se Standard 4 brief [2] that trial counsel was ineffective for failing to object to the

---

[2] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

prosecutor's withholding of parts of the surveillance video. The judge noted that the Michigan Court of Appeals rejected this claim by ruling that there was no evidence that the prosecutor withheld any surveillance video. The Michigan Court of Appeals also rejected Petitioner's argument that a different result may have occurred had the judge been presented with video footage from outside the gas station, noting that the evidence showed that Petitioner pulled out his firearm before entering the gas station where he confronted the victim. The Michigan Court of Appeals had also noted in its opinion that the video shows Petitioner "chasing and firing shots at an apparently unarmed Mr. Turner inside the store." *See People v. Wright*, No. 15-009130-01-FC, * 3-4; ECF No. 21-7, PageID. 2047-48.

Petitioner is not entitled to habeas relief because he failed to show that the prosecution withheld any video surveillance tapes or that any of this material was exculpatory. A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). Petitioner's conclusory allegations fail to establish a *Brady* violation.

Indeed, a review of the videotapes provided by Petitioner show that the victim was killed in cold blood. The failure to turn over inculpatory evidence does not violate *Brady. See United States v. Henry,* 71 F. App'x 493, 502 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his fifth claim.

### IV. Conclusion

The Court denies the petition for writ of habeas corpus with prejudice. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. §

2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).  The Court also denies Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/Nancy G. Edmunds
**HON. NANCY G. EDMUNDS**
UNITED STATES DISTRICT COURT JUDGE

Dated: March 11, 2025

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 11, 2025, by electronic and/or ordinary mail.

s/Marlena Williams
Case Manager